IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MANDY BENIGAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-562-PJC |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Claimant, Mandy Benigar ("Benigar"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Benigar appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Benigar was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**Claimant's Background**

Benigar was 52 years old at the time of the hearing before the ALJ on January 21, 2009. (R. 16, 22). She had two years of college work. (R. 22). Benigar testified that she did not work after her alleged onset date of February 25, 2007. (R. 22-23). At that time, she was fired

1

for taking unauthorized breaks, which she testified were times that she had to sit down due to pain. (R. 23-24).

Benigar testified that she had to have help with self-care tasks such as tying her shoes, because it was too painful for her to bend over to tie them. (R. 24). She testified that on a normal day after getting dressed she would do the dishes. *Id.* She did this by standing for a few minutes washing, and then sitting for a while. (R. 24-25). She helped with the family laundry that her family members would take to the laundry room by sorting the clothes into loads using the same practice of working for a few minutes and then resting for a few minutes. (R. 25). She could put the sorted clothes into the washer, but then a family member would move it from the washer to the dryer. (R. 25-26). She could not stand up and bend over to pull the clothes out of her top-loading washer because of pain in her back. *Id.* She described the pain as a sensation that her lower back was "on fire." (R. 26). A family member would then remove the clothes from the dryer and bring them to her bedroom, where Benigar could fold them. *Id.* She could not dust due to breathing issues, and she could not vacuum, sweep, or mop due to issues with her arm. *Id.* Family members did most of the cooking and took out the trash, did yard work, and cared for the cat. (R. 26-27). Family members did the grocery shopping because she could not walk as required for that. (R. 30). She no longer attended church because she could not sit for the length of time required for the services. *Id.* She did not drive due to limits in how much she could turn her head. (R. 31-32).

Benigar spent her time during the day changing positions from lying down to sitting and then moving around in order to ease the pain in her back. (R. 27). Benigar testified that she had trouble with her right hip so that at times it would cause numbness down her right leg. (R. 32). She had severe pain in her right knee. (R. 33). She could sit for about 30 minutes at a time, and

2

then she would need to lie down. (R. 27). She could stand for approximately 15 minutes. (R. 33). She could not walk a block due to the pain in her back, legs, knees, and ankles, and due to her difficulty breathing. *Id.* She had recently quit smoking, and she used various medications to assist her with her breathing. (R. 33-34). She left the house a couple of times a month to pick up meat with a family member and to attend a 40-minute basketball game. (R. 28-29). It was difficult for her to leave the house more in part due to the difficulty of getting dressed, the pain that effort caused, and the need for help to do it. (R. 29). Her pain medications sometimes made her drowsy. (R. 29).

In order to work, she would need for her lungs to work so that she could breathe better, her back would need to be able to bend, and her shoulders, knees, and neck would need to be fixed. (R. 30-31). Her right shoulder had limits in mobility, and she could not move her arm behind her or lift it above her head. (R. 31). She was right-handed, she had trouble grasping, and she could not open bottles. (R. 32). She kept her right arm close to her body to limit her pain. (R. 31).

The administrative transcript includes treating records from Wesley M. Ingram, D.O. from 2005 through 2008. (R. 148-210, 242-45, 248-57). Benigar was seen by Dr. Ingram on February 15, 2005 for foot pain, and an x-ray of Benigar's right foot showed no significant abnormality. (R. 205-07, 210). The diagnosis was ankle sprain. (R. 207). On October 5, 2005, Benigar was seen for severe pain in her right shoulder along with new pain in her wrist and elbow. (R. 195-98). On examination, she had pain in all ranges of motion of her shoulder. (R. 197). She also had minimal air movement, diffuse wheezing, and coarse breath sounds in both lungs. *Id.* Dr. Ingram gave an injection in Benigar's right shoulder joint. *Id.* Several assessments were listed, including "degenerative joint," neck sprain, myalgia, esophagitis, and

hypertension not otherwise specified. *Id.* She returned on October 24, 2005 with continuing right shoulder pain, and Dr. Ingram administered another injection. (R. 191-93).

On March 6, 2006, Benigar was seen by Dr. Ingram for a persistent cough, and the assessments at that time included chronic obstructive pulmonary disease ("COPD"). (R. 179-82). On July 13, 2006, Benigar was seen again for right foot pain. (R. 169-72). The assessments appear to include osteoarthritis of the ankle, "degenerative joint," and gout arthropathy. (R. 172). Benigar was seen and assessed with bronchitis on September 19, 2006. (R. 164-66). Benigar was seen on August 13, 2007 for shoulder and neck pain, but the record from Dr. Ingram appears to be incomplete. (R. 148).

While a record dated February 11, 2008 states that Benigar was seen by Dr. Ingram for left shoulder pain, the examination and assessments relate to Benigar's breathing. (R. 254-56). Benigar was again assessed with COPD, as well as extrinsic asthma, allergic rhinitis, esophagitis, hypertension not otherwise specified, and depression. (R. 255). On March 3, 2008, Benigar was seen after she fell off of her bed, and Benigar stated that she had wrist pain, with loss of feelings in her fingers. (R. 249). Benigar had been told in the emergency room that x-rays of her wrist and hand were normal. *Id.* Cervical spine x-rays taken that day showed degenerative changes that were worst at the C6/C7 level. (R. 257). Benigar was assessed with wrist tendinitis, wrist sprain, and neck sprain. (R. 250).

Benigar was examined by agency consultant Gary R. Lee, M.D. on September 24, 2007. (R. 212-19). Dr. Lee found diminished range of motion on examination of Benigar's cervical, thoracic, and lumbar spine. (R. 213). Dr. Lee's examination found no abnormalities in Benigar's lungs. *Id.* Dr. Lee stated that there was marked pain, tenderness, and diminished range of motion of Benigar's right shoulder. *Id.* Dr. Lee found tenderness and pain in both elbows and

4

wrists. (R. 213-14). He also found pain in both hips, with Benigar's right hip worse than her left. (R. 214). Dr. Lee stated that Benigar's examination, history and medical records were consistent with findings of hypertension; severe neck and back pain with degenerative disc disease; arthritis in her hips with pain on motion; pain in her elbows, wrists, and hands with arthritis; and right rotator cuff tear with range of motion loss, pain, and tenderness. *Id.*

Non-examining agency consultant Luther Woodcock, M.D. completed a Physical Residual Functional Capacity Assessment dated October 11, 2007. (R. 234-41). Dr. Woodcock found Benigar's exertional abilities to be consistent with light work. (R. 235). For explanation, Dr. Woodcock summarized Dr. Lee's report and also stated that Benigar's activities of daily living showed that she fixed meals, did housework, drove, and shopped. *Id.* For postural limitations, Dr. Woodcock found that Benigar could only occasionally stoop, but he found no problems with climbing, balancing, kneeling, crouching, or crawling, referring back to his explanation for the exertional abilities. (R. 236). For manipulative limitations, Dr. Woodcock found that Benigar was unlimited in her ability to handle and feel, but that she was limited in reaching and in fingering. (R. 237). He again referred back to his original explanation for exertional abilities, but then added that "[p]ain restricts reaching with the right shoulder." *Id.* He also stated that pain affected Benigar's fine manipulation. *Id.* For environmental limitations, Dr. Woodcock stated that Benigar should avoid concentrated exposure to hazards, again referring back to his original explanation. (R. 238). He found no further limitations. (R. 234-41).

### Procedural History

On July 25, 2007, Benigar filed an application seeking disability insurance benefits under Title II, 42 U.S.C. §§ 401 *et seq.*, alleging disability beginning February 25, 2007. (R. 95-97). According to the ALJ's decision, Benigar also filed an application seeking supplemental security

income under Title XVI, 42 U.S.C. §§ 401 *et seq*. (R. 9). The applications were denied initially and on reconsideration. (R. 50-57, 60-65). A hearing before ALJ Lantz McClain was held January 21, 2009, in Tulsa, Oklahoma. (R. 16-44). By decision dated April 22, 2009, the ALJ found that Benigar was not disabled at any time through the date of the decision. (R. 9-14). On July 17, 2009, the Appeals Council denied review of the ALJ's findings. (R. 2-5). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981, § 416.1481.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)

---

[1]  Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish

(detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

The ALJ found that Benigar met insured status requirements through the date of his decision. (R. 11). At Step One, the ALJ found that Benigar had not engaged in any substantial gainful activity since her alleged onset date of February 25, 2007. *Id.* At Step Two, the ALJ found Benigar had severe impairments of asthma, possible right rotator cuff tear, degenerative disc disease, and obesity. *Id.* At Step Three, the ALJ found that none of Benigar's impairments

---

at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

7

equaled a Listing. (R. 12).

The ALJ determined that Benigar had the RFC to perform light work, but with additional limitations of "only occasionally stoop; avoid working above shoulder level; and no constant use of the hands for such repetitive tasks as keyboarding." *Id.* At Step Four, the ALJ found that Benigar had the RFC to perform her past relevant work as a cashier/stocker. (R. 14). Therefore, the ALJ found that Benigar was not disabled at any time from February 25, 2007 through the date of the decision. *Id.*

### Review

On appeal, Benigar asserts that it was error for the ALJ to include only a limitation to "avoid working above shoulder level" in his RFC determination, when the nonexamining agency consultant stated that "[p]ain restricts reaching with the right shoulder." The undersigned agrees with Benigar that this unexplained and unsupported narrowing of the limitation found by the agency consultant requires that this case be reversed.

Generally, the evidence of a nonexamining consultant is given less weight than evidence from other sources. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). However, even nonexamining consultant opinion evidence must be weighed and explained when the opinions are conflicting. *Shubargo v. Barnhart,* 161 Fed. Appx. 748, 753-54 (10th Cir. 2005) (unpublished). In *Shubargo*, there were several nonexamining opinions, and most of them said that the claimant could do light work, but one opinion (apparently given by the same Dr. Woodcock who completed the Physical RFC Assessment in this case) said that the claimant could only do sedentary work. *Id.* At the sedentary level, the use of the Grids[2] would have

---

[2] The Grids are the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2.

determined that the claimant in *Shubargo* was disabled. *Id.* In his RFC determination, the ALJ found that the claimant could do light work, but he did not explain why he rejected the nonexamining opinion that the claimant could only do sedentary work in favor of the other opinions. The Tenth Circuit found that the case had to be remanded to allow the ALJ to make this explanation. *Id. See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (ALJ's rejection of consulting examiner's opinion evidence by including some restrictions and excluding others required explanation).

Here the ALJ stated that Dr. Woodcock and another medical expert with the state agency found that Benigar could perform light work. (R. 14). The ALJ never mentioned the nonexertional limitations that Dr. Woodcock found, including his specific narrative statement that pain restricted Benigar's ability to reach. (R. 237). Dr. Woodcock's Physical RFC Assessment did not refer in any way to an "overhead" or "above shoulder level" qualification on his opinion that Benigar's ability to reach was limited. In other words, the ALJ altered the only opinion evidence he had before him to make the nonexertional reaching limitation less favorable to Benigar. When the ALJ's RFC determination differed from the opinion evidence of the nonexamining consultant in ways that were adverse to Benigar, the ALJ needed, at a minimum, to explain the reason why he varied from the opinion. *See Robinson*, 366 F.3d at 1083 (ALJ "not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability"); *Kerwin v. Astrue*, 244 Fed. Appx. 880, 884-85 (10th Cir. 2007) (unpublished) (ALJ's unexplained failure to include handling, fingering, and walking limitations found in consulting examiner's opinion required reversal).

Here, as Benigar's attorneys point out, the issue of a reaching restriction could be relevant at Step Four, because Benigar's past relevant work as a cashier/stocker could require either

9

frequent or constant reaching, depending on which Dictionary of Occupational Titles job description is used.  The Commissioner does not dispute this point, but argues that the ALJ's RFC determination is supported by Dr. Woodcock's finding that Benigar could push/pull up to 20 pounds, by the limited nature of the treating evidence, and by Benigar's activities of daily living.  Defendant's Brief, Dkt. #19, pp. 4-5.  This argument is not persuasive first because the ALJ did not include any such reasoning.  The Court will not "adopt post-hoc rationalizations that are not apparent from the ALJ's decision itself."  *Haga*, 482 F.3d at 1207-08.  Second, the treatment notes of Dr. Ingram and the consulting examination report of Dr. Lee reflect that Benigar's shoulder was painful in all ranges of motion.  (R. 193, 197, 213).  Thus, the ALJ's narrowing of the limitation found by Dr. Woodcock is directly contradicted by the medical evidence.

The undersigned emphasizes that "[n]o particular result" is dictated on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993).  This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case.  *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

**Conclusion**

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 19th day of November, 2010.

Paul J. Cleary
United States Magistrate Judge